IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JDA eHEALTH SYSTEMS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No.   10 C 7781 |
| | ) | Judge Blanche M. Manning |
| | ) | |
| CHAPIN REVENUE CYCLE | ) | |
| MANAGEMENT, LLC; AUDITZ, | ) | |
| L.L.C., KEITH HENTHORNE; and | ) | |
| TIMOTHY CARDA, | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

JDA eHealth Systems, Inc. sued Chapin Revenue Management Cycle, LLC, Auditz, L.L.C. and individual defendants Keith Henthorne and Timothy Carda alleging copyright infringement, unfair trade practices and competition under the Lanham Act and various state law claims resulting from a nascent business relationship. Defendants Chapin, Henthorne and Carda have filed a motion to dismiss for lack of personal jurisdiction and failure to state a claim. All defendants have filed a separate motion to transfer. For the reasons stated below, the motion to dismiss for lack of personal jurisdiction is granted as to Henthorne and Carda. The motion to transfer is granted and the case is hereby transferred to the United States District Court for the Middle District of Florida. Given the transfer, the court did not consider and does not rule on the issues raised by the motion to dismiss for failure to state a claim.

**Facts**

Bon Secours Health Systems, Inc. is a not-for profit health care system that owns, manages or forms joint ventures with 18 acute-care hospitals, one psychiatric hospital, five nursing care facilities, four assisted living facilities and 14 home care and hospice programs in seven states, primarily on the East Coast. BSHS bills individuals directly for medical services not covered by insurance. It outsources most of its debt collections to third-party debt collection companies.

JDA is a software developer that licenses its proprietary software. Over the course of more than 15 years, JDA developed its proprietary copyrighted Parathon revenue cycle solution, primarily for hospitals and health care systems. JDA and BSHS began a business relationship in 1999. On or about July 26, 2002, BSHS executed a Master Services Agreement which includes provisions regarding confidential disclosures and access to JDA's intellectual property licensed to BSHS.

Chapin is a debt collection company. At some point before January 1, 2008, Chapin

contracted to be a debt collection agent for BSHS. Because much of BSHS's patient accounts receivable information was stored in JDA's Parathon revenue cycle solution, BSHS requested that JDA provide Chapin and individual defendants Henthorne and Carda access to JDA's Parathon revenue cycle solution. JDA did so.

JDA alleges that, on information and belief, Henthorne and Carda formed Auditz, L.L.C. on or around April 10, 2008, for the purpose of covertly developing a revenue cycle management software solution that competes with and infringes JDA's Parathon revenue cycle solution.

In January 2010, JDA and Chapin entered into a confidentiality agreement under which JDA would disclose certain trade secret information to Chapin and its principals Carda and Henthorne. The agreement binds the parties until January 29, 2012. According to JDA, Chapin, Carda, Henthorne and Auditz used their access to JDA's revenue cycle solution and confidential information to develop a competing software that infringes on JDA's revenue cycle solution. The defendants then sold and/or licensed their revenue cycle software to Emdeon, Inc. for $18.9 million.

JDA brings suit alleging the following claims: Count I–Copyright Infringement; Count II–Unfair Trade Practices under the Lanham Act; Count III–Unfair Competition under 815 ILCS 505/1; Count IV–Deceptive Trade Practices under 815 ILCS 505/2; Count V--Trade Secret Misappropriation under the Illinois Trade Secrets Act, 765 ILCS 5/1065; and Count VI–Breach of the Confidentiality Agreement.

Because the court concludes that personal jurisdiction does not exist as to Henthorne and Carda, the action is dismissed as to these defendants. The court also concludes in its discretion that the case be transferred to the United States District Court for the Middle District of Florida. Because the case is being transferred, the court does not rule on the motion to dismiss for failure to state a claim.

**Analysis**

    A.    <u>Motion to Dismiss for Lack of Jurisdiction</u>

        1.    *Personal Jurisdiction–Applicable Law*

Neither the Copyright Act nor the Lanham Act authorize nationwide service of process. *See Janmark v. Reidy*, 132 F.3d 1200, 1201 (7th Cir. 1997) (Copyright Act); *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001) (Lanham Act). "In [a] federal question case where federal statutes do not authorize nationwide service of process, a federal court in Illinois may exercise personal jurisdiction over [the defendant] if it would be permitted to do so under the Illinois long-arm statute." *Ubid, Inc. v. The GoDaddy Group*, 623 F.3d 421,

425 (7th Cir. 2010)[1]. Because Illinois' long-arm statute extends to the maximum extent permitted by the Illinois and United States constitutions, jurisdiction under the long-arm statute is coextensive with federal due process requirements. 735 ILCS 5/2-209(c); *see, e.g., RAR, Inc. v. Turner Diesel Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). Thus, "the personal jurisdiction analysis collapses into a federal due process inquiry." *Foley v. Yacht Management Group, Inc.*, No. 08 C 7254, 2009 WL 2020776, at *2 (N.D. Ill. Jul. 9, 2009) (citations omitted).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution limits when a state may assert personal jurisdiction over nonresident defendants. *Pennoyer v. Neff*, 95 U.S. 714, 733 (1878). To exercise personal jurisdiction consistent with federal due process, a defendant must have certain minimum contacts with the forum state such that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

"Personal jurisdiction can be either general or specific, depending on the extent of the defendant's contacts with the forum state." *Ubid, Inc.*, 623 F.3d at 425. Specific jurisdiction refers to jurisdiction over a defendant if a suit "arises out of" or "relates to" the cause of action even if those contacts are "isolated and sporadic." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). General jurisdiction is applicable when the lawsuit neither arose from nor was related to the defendant's contacts with the forum state. *RAR, Inc.*, 107 F.3d at 1277. Such jurisdiction is permitted only where the defendant has "continuous and systematic general business contacts" with the state. *Id*.

"When a defendant's motion to dismiss is based on the submission of written materials, without the benefit of an evidentiary hearing, the plaintiff need only make out a prima facie case of personal jurisdiction." *GCIU-Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009) (citation omitted). The court draws all reasonable inferences in favor of the plaintiff and resolves all factual disputes in its favor. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 & n.14 (7th Cir. 2003) (citations omitted).

Defendants Chapin, Carda and Henthorne contend that this court cannot exercise personal jurisdiction over them. Defendant Auditz does not move to dismiss for lack of personal jurisdiction.

          2.     *Personal Jurisdiction over Chapin, Carda and Henthorne*

The defendants have set forth in affidavits the facts they believe are relevant to the

---

[1] As to the plaintiff's state law claims, the court has subject matter jurisdiction under the diversity jurisdiction. Federal courts sitting in diversity may exercise personal jurisdiction over nonresident defendants only if a court in the forum state would have such jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Thus, the personal jurisdiction inquiry in this case is the same for the federal question claims as well as the state law claims.

resolution of the personal jurisdiction issue.

Defendant Henthorne. Henthorne's affidavit indicates that he was the chairman of the board of directors of Chapin for the time relevant to this dispute. As the chairman of the board of directors, he attests that he had no responsibility for day-to-day management of Chapin and that his responsibilities related solely to strategic management issues. According to Henthorne, he met with JDA's president once in Florida where they discussed potential strategic alliances between Chapin and JDA. Henthorne then executed a confidentiality agreement and "was invited" to meet with JDA representatives at JDA's offices in Illinois in February 2010. This was the only meeting with JDA in Illinois. Henthorne attests that all negotiations between JDA and Chapin were completed by the end of March 2010 and that no relationship ever materialized between the companies.

Henthorne currently has no ownership interest in Chapin and prior to June 21, 2010, he did not have a majority ownership in Chapin. As for Auditz, Henthorne was a member of its board of directors prior to June 21, 2010, but is no longer a member of Auditz's board. He states he was never an employee of Auditz and that any ownership interest he has is indirect in that he has ownership in an entity (Emdeon) that owns Auditz. Finally, Henthorne states that he has never lived in Illinois, has not maintained any offices in Illinois, has not owned any property in Illinois, has not reached into Illinois to solicit or initiate any business, has not "deliberately engaged in significant or long-term business activities in Illinois," and has not "purposefully directed any commercial activities into the State of Illinois."

Defendant Carda. Carda's affidavit indicates that he has been employed by Emdeon Business Services, Inc., as vice president of its subsidiary Chapin Revenue Cycle Management, LLC. From February 2009 through June 21, 2010, he served as president of Chapin and was responsible for the day-to-day management of the company. In January 2010, Carda met with the president of JDA at the Richmond, Virginia offices of BSHS to have initial discussions regarding potential strategic alliances between Chapin and JDA. Dudley then traveled to the Chapin offices in Tampa on January 26, 2010 for an additional meeting to explore the strategic alliance. Carda never traveled to Illinois to meet with JDA regarding any matters. After the initial two meetings between Carda and Dudley, Henthorne communicated with JDA.

Carda presently has no ownership interest in Chapin and prior to June 21, 2010, he did not hold a majority interest in Chapin. From its inception in 2008 to June 21, 2010, Carda was the chief executive officer of Auditz, but is no longer employed there and is contractually prohibited from actively participating in Auditz's day-to-day business operations. Carda never had a direct ownership interest in Auditz of more than 5% and any indirect ownership he has in Auditz has never constituted a majority interest. Like Henthorne, Carda also attests that he has never lived in Illinois, has not maintained any offices in Illinois, has not owned any property in Illinois, has not reached into Illinois to solicit or initiate any business, has not "deliberately engaged in significant or long-term business activities in Illinois," and has not "purposefully directed any commercial activities into the State of Illinois."

<u>James Dudley</u>.  Dudley attests that at all relevant times he was the principal of JDA eHealth Systems.  Sometime shortly after January 1, 2008, BSHS asked him to provide login credentials to Chapin to access JDA's proprietary software and database that warehouses significant amounts of BSHS accounts receivable information.  JDA provided several sets of login credentials to Henthorne and Carda for use by Chapin and its agents.  Since then, Dudley attests that Chapin, Henthorne and Carda have used the login credentials to access the software interface and database warehoused on JDA's servers located at JDA's offices in Naperville, Illinois.

Beginning in early March 2008, after having accessed JDA's software for nearly two months, Chapin requested that JDA make changes to JDA's software to provide specialized access for Chapin.  Chapin identified the specific categories of information it required and JDA modified the source code to export the data.  The changes were made on JDA's servers located in Naperville.  Dudley asserts that from 2008 through at least December 2010, Chapin "has regularly, systematically, and continuously accessed JDA's software and database to access BSHS data warehoused on JDA's servers and in JDA's database located on servers in Naperville, Illinois.  Chapin's access was solely for a commercial purpose."  Dudley Aff. at ¶ 6.  According to Dudley, he was contacted by Carda in early 2010 to discuss possible business relationships between Auditz and JDA and/or Chapin and JDA.  Dudley traveled to Chapin's offices in Tampa, Florida, in late January 2010.  On February 4, 2010, Henthorne traveled to JDA's offices in Naperville.  As a result of these meetings, the parties signed a written confidentiality agreement regarding information that JDA was to disclose to Chapin.

      a.      Chapin

           i.      General Jurisdiction

The plaintiff asserts that the court may exercise general jurisdiction over Chapin because it engaged in a business relationship with JDA since January 2008 at the earliest and January 2010 at the latest, which included at least one meeting between JDA and Chapin in Illinois.  In addition, Chapin acknowledges that it has at least one additional client in Illinois, and JDA contends that Chapin indicated to JDA at some point in time that it serviced at least five clients in Illinois.

As already discussed, general jurisdiction is permitted only where the defendant has "continuous and systematic general business contacts" with the state.  *RAR, Inc.*, 107 F.3d at 1277.  Contacts sufficient to establish general jurisdiction must be "so extensive as to be tantamount to [defendant] being constructively present in the state."  *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003).

JDA's allegations and Dudley's affidavit fail to establish that Chapin was constructively present in Illinois such that it could be subject to the court's general jurisdiction.  According to Carda and Henthorne's affidavits, Chapin's one Illinois client is St. Mary's Hospital in Decatur, Illinois, which represents less than 1% of Chapin's business.  Dudley, JDA's president, attests in

his opposing affidavit that "Chapin" told him that it serviced at least five businesses in the state of Illinois. Even accepting Dudley's version of the facts as we must, the mere servicing of five businesses in Illinois does not establish that general jurisdiction is properly exercised over Chapin. The record does not indicate the extent of the contacts in servicing the five businesses or how much business they represented to Chapin. Moreover, the plaintiff's attempt to rely on JDA's purported business relationship with Chapin to establish general jurisdiction is unavailing as "[g]eneral jurisdiction is for suits neither arising out of nor related to the defendant's contacts with the State . . . " *GCIU–Employer Retirement Fund,* 565 F.3d at 1023.

Because "[t]he threshold for general jurisdiction is high . . . [and] the contacts must be sufficiently extensive and pervasive to approximate physical presence," *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010), the plaintiff has failed to meet its burden of establishing a prima facie case of general jurisdiction as to Chapin.

### ii. Specific Jurisdiction

JDA also contends that specific jurisdiction exists over Chapin based on its commercial internet contacts with Illinois. JDA argues that "[c]ourts in this district have adopted the 'sliding scale' approach" but fails to cite to any cases in this jurisdiction in support, and only cites to *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). This failure might be due to the fact, as noted by another court in this district, that "the Seventh Circuit has spoken yet again on this [jurisdictional] issue and has unequivocally rejected the 'sliding scale' approach to personal jurisdiction suggested by [the plaintiff]." *Roser v. Jackson & Perkins Wholesale, Inc.*, No. 10 C 1894, 2010 WL 4823074, at *4 (N.D. Ill. Nov. 15, 2010) (*quoting Illinois v. Hemi Group LLC*, 622 F.3d 754, 759 (7th Cir. 2010) ("[W]e think that the traditional due process inquiry ... is not so difficult to apply to cases involving Internet contacts that courts need some sort of easier-to-apply categorical test.")). Because the Seventh Circuit has rejected the sliding scale approach relied on by JDA, this court will not consider it in assessing whether specific jurisdiction exists over Chapin.

Nevertheless, the court concludes based on the evidence presented that specific jurisdiction exists over Chapin. Dudley, JDA's president, states in his affidavit that JDA provided several sets of login credentials to Chapin so that multiple individuals at Chapin could access or delegate access to JDA's software to retrieve BSHS account receivable information. JDA further asserts that Chapin, Henthorne and Carda have routinely and systematically accessed JDA's software utilizing JDA's computer servers located in Naperville. While Henthorne and Carda deny in their affidavits that they received any login credentials or personally accessed JDA's software, they do not deny that employees at Chapin did so.

Chapin's attempts to characterize its accessing JDA's online database as "passive" and thus insufficient to establish specific jurisdiction are unpersuasive. In the case cited by Chapin, *Dakota Beef, LLC v. Pigors*, 445 F. Supp.2d 917 (N.D.Ill. 2006), the court concluded that jurisdiction cannot be premised on a defendant's maintenance of a "passive" website from which individuals in foreign jurisdictions may obtain information about the company. As the Seventh

Circuit has stated:

> With the omnipresence of the Internet today, it is unusual to find a company that does not maintain at least a passive website. Premising personal jurisdiction on the maintenance of a website, without requiring some level of "interactivity" between the defendant and consumers in the forum state, would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country.

*Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004).

This case is distinguishable. Specific jurisdiction is not being premised on Chapin's website; rather, JDA alleges and Dudley attests that Chapin actively and purposefully accessed its software and database situated on a server in Naperville "regularly" and "systematically" since January 2008. Construing the facts in JDA's favor, as the court must, the court concludes that Chapin could expect to be haled into court based on this contact.

JDA also alleges that specific jurisdiction exists based on the written confidentiality agreement between the parties. The court need not address this basis for personal jurisdiction given that it has already concluded that personal jurisdiction exists.

Because the court finds that JDA has set forth a prima facie case for personal jurisdiction over Chapin, the motion to dismiss Chapin for lack of personal jurisdiction is denied.

      b.      Carda and Henthorne

            i.      General jurisdiction

The plaintiff fails to articulate any valid basis for exercising general jurisdiction over Carda or Henthorne. JDA briefly makes reference to the fact that Carda and Henthorne are principals of Auditz, which maintains an office in Chicago, Illinois. While it is true that maintaining an office in a jurisdiction is one factor a court may consider in ascertaining whether the exercise of general jurisdiction is appropriate, JDA fails to cite to any authority which would support of finding of continuous and systematic general business contacts based solely on the fact that a person is a principal in an entity that maintains an office in Illinois. Carda and Henthorne attest that they have never personally accessed JDA's software located on the Naperville, Illinois server, have not maintained any offices in Illinois, have not owned any property in Illinois, have not reached into Illinois to solicit or initiate any business, have not "deliberately engaged in significant or long-term business activities in Illinois," and have not "purposefully directed any commercial activities into the State of Illinois."

The court acknowledges that Dudley attests that Henthorne and Carda personally accessed JDA's database in Naperville on a regular and systematic basis. However, Dudley does not provide any foundation for this statement. Even if Henthorne and Carda did receive login

credentials, Dudley has provided no basis of personal knowledge for his statement that Henthorne and Carda (as opposed to other Chapin employees) used these login credentials to access the JDA database. Moreover, as already noted above, "[g]eneral jurisdiction is for suits neither arising out of nor related to the defendant's contacts with the State . . . ." *GCIU–Employer Retirement Fund,* 565 F.3d at 1023.

Accordingly, based on the record as it stands, the court finds that general jurisdiction over Carda and Henthorne does not exist. JDA asks for the opportunity to conduct jurisdictional discovery in the event the court concludes that jurisdiction does not exist. "Generally, jurisdictional discovery is justified if the plaintiff can show that the factual record is at least ambiguous or unclear on the jurisdictional issue." *Trading Technologies Inter., Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2011 WL 1220013, at *3 (N.D. Ill. Mar. 28, 2011) (citation omitted). JDA fails to make such a showing with respect to the facts related to general jurisdiction over Carda and Henthorne. Accordingly, the motion for jurisdictional discovery is denied.

        ii.        Specific Jurisdiction

JDA does not contend that specific jurisdiction exists over Carda and Henthorne; accordingly, this basis for jurisdiction has been waived. *DDI Seamless Cylinder Int'l, Inc. v. Gen. Fire Extinguisher Corp.*, 14 F.3d 1163, 1168 (7th Cir. 1994) ("An issue must be pressed, must be argued and supported; a bare conclusion is not enough.").

    3.    *Fiduciary Shield Doctrine*

The parties devote significant portions of their briefs to a discussion of whether Illinois' fiduciary shield doctrine protects the individual defendants from this court's jurisdiction. Because the court has concluded that personal jurisdiction over the individual defendants is lacking, the court need not address the applicability of the fiduciary shield doctrine.

    B.    Motion to Transfer

After considering the motions to dismiss for lack of personal jurisdiction, the remaining defendants are Chapin and Auditz. The defendants seek to transfer this case to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Under § 1404(a), the party seeking transfer must demonstrate that: (1) venue is proper in the transferor court; (2) venue would be proper in the transferee court; and (3) transfer will serve the convenience of the parties and witnesses and promote the interests of justice. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). In addition, "the movant has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). "When deciding a motion to transfer venue, the court must accept as true all of plaintiff's well-pleaded facts in the complaint, unless they are

contradicted by affidavits or other appropriate evidence from the defendant." *Andrade v. Chase Home Fin., LLC*, No. 04 C 8229, 2005 WL 3436400, at *2 (N.D. Ill. Dec. 12, 2005).

1.  Venue in the transferor court

Venue is proper in the Northern District of Illinois as to Chapin and Auditz, the only two defendants left in this case, because under 28 U.S.C. § 1391(b), venue is proper in any district in which the defendant resides. A corporation is deemed to reside in any district "in which it is subject to personal jurisdiction at the time the action is commenced." *Id*. § 1391(c). Auditz concedes that venue is proper in this district and the court has concluded that Chapin is subject to this court's personal jurisdiction. Thus, venue is proper here as to both Chapin and Auditz.

2.  Venue is proper in the transferee court

The plaintiff does not assert that venue is improper in the Middle District of Florida; accordingly, because all of the defendants reside in Florida, and at least one resides in the Middle District of Florida, see 28 U.S.C. § 1391(b), the court concludes that venue is proper in the Middle District of Florida.

3.  Private interest factors (convenience of parties and witnesses)

When evaluating the private interest factors, the court considers: (1) the plaintiffs' choice of forum; (2) the situs of material events; (3) the availability of evidence in each forum; (4) the convenience of the witnesses; and (5) the convenience of the parties litigating in the respective forums. *Handler v. Kenneth Allen & Associates, P.C.,* No 10 C 3728, 2011 WL 1118499, at *2 (Mar. 24, 2011) (citations omitted). The court also considers whether the parties have met their burden of specifically identifying the witnesses they intend to call, as well as the general content of the witnesses' proposed testimony. *Mattsson By and Through Mattsson v. Gerry Wood Products Co.*, No. 95 C 2314, 1997 WL 158334, at * 1 (N.D. Ill. Mar. 31, 1997).

a.  *Plaintiff's choice of forum*

The plaintiff's choice of forum is normally given substantial weight when the court considers a motion to transfer. *Amorose v. C.H. Robinson Worldwide, Inc*., 521 F.Supp.2d 731, 736 (N.D. Ill. 2007). Here, JDA eHealth Systems chose to file suit in the Northern District of Illinois. Standing alone, this fact weighs against transfer. However, "where the plaintiff's choice of forum has a relatively weak connection with the operative facts giving rise to the claim ... the deference traditionally given to the selection is lessened." *Brady v. Hanger Orthopedic Group, Inc*., No. 05 C 0492, 2006 WL 2560953, at *2 (N.D. Ill. Aug. 30, 2006). In the face of a weak relationship between the operative facts and the plaintiff's chosen forum, the plaintiff's choice of forum becomes "only one of the many factors the court considers." *D'Ancona & Pflaum LLC v. M2 Software, Inc.*, No. 00 C 7150, 2001 WL 873021, at *2 (N.D. Ill. Aug.2, 2001). Finally, "[t]he plaintiff's choice of forum is given less deference if another forum has a stronger relationship to the dispute." *Rendon v. Wexford Health Services, Inc*., No. 10 C 1590, 2010 WL

Page 9

5129818, at * 5 (N.D. Ill. Dec. 10, 2010) (citation omitted) (*citing Powell v. Sparrow Hosp.*, No. 09 C 3239, 2010 WL 582667, at *3 (N.D. Ill. Feb 12, 2010) (collecting cases)).

The question thus becomes whether Illinois has a stronger connection, relative to Florida, to the operative facts giving rise to JDA's claims, most of which are based on the defendants' purported illegal copying of the plaintiff's software. "In an infringement action, one locus of operative facts is the place where the allegedly-infringing product was designed and developed." *Atlantic Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp.2d 690 (S.D.N.Y. 2009). Here, the allegedly infringing product was designed in Florida. The plaintiff's attempt to convolute the issue by asserting the copying "took place not only on Defendant's computers, but also on Internet routers in every district through which a data packet was routed . . ." is unpersuasive. While the information may have passed through multiple locations, the court agrees with the *Atlantic Recording Corp.* court that in an infringement action, one locus of operative facts is the places where the allegedly-infringing product was designed and sold. Thus, while the plaintiff's choice of forum is normally given substantial weight, it is given less deference in this case given that the purported infringement took place in Florida.

As to the breach of the confidentiality agreement, the situs of material events in a breach of contract case "is where the business decisions causing the breach occurred ...." *First Nat'l Bank v. El Camino Res. Ltd.*, 447 F. Supp.2d 902, 912 (N.D. Ill. 2006) (*quoting Hyatt Corp. v. Personal Commc'ns Indus. Ass'n,* No. 04 C 4656, 2004 WL 2931288, at *3 (N.D. Ill. Dec.15, 2004)). Neither the complaint nor any evidence in the record expands on where the business decisions related to the breach occurred. Accordingly, the court does not factor this claim in its decision on this issue.

Based on the above, the court concludes that the plaintiff's choice of forum, Illinois, is not entitled to substantial weight in this case.

      b.      *Situs of Material Events*

As noted above, to the extent that infringing software was developed in Florida, that state is a situs of material events. On the other hand, the plaintiff's server and software is located in Illinois. The plaintiff attempts to analogize this case to *Sunrise Bidders, Inc. v. GoDaddy Group, Inc.*, No. 09 C 2123, 2011 WL 1357516, at *2 (N.D. Ill. Apr. 11, 2011), in which the court stated that "the situs of material events is potentially everywhere Sunrise's website is accessible." Based on this observation, the plaintiff asserts that "[j]ust as Sunrise's websites were available everywhere, so to [sic] is Plaintiff's website available everywhere." As an initial matter, the plaintiff fails to articulate the relevance of this last assertion to the instant analysis. Moreover, the plaintiff fails to take into account the rest of the *Sunrise Bidders* quotation. The full quote reads:

> Relatedly, in a case such as the one at hand, the situs of material events is potentially everywhere Sunrise's website is accessible; Sunrise could have easily sued in many different districts since GoDaddy's business is entirely conducted on

>   the internet. However, since Sunrise chose Illinois, its home forum, as the preferred venue for this action, we will defer to Sunrise's choice of forum if other factors remain equal between the parties.

*Id.*

Here, no record evidence exists that the defendants' business is entirely conducted on the internet and therefore the defendant could have been sued in many different districts. Thus, because the facts of the case are distinguishable, the conclusion, that the court should defer to the plaintiff's choice of forum, is inapplicable. The court finds this factor to be neutral.

    c.  *Availability of Evidence*

The court agrees with the parties that the record does not appear to be voluminous and "[c]hanges in copying technology and information storage ... have rendered many traditional concerns about document production moot." *Cypress Medical Products, L.P. v. Worthington*, No. 04 C 7034, 2005 WL 936903, at *4 (N.D. Ill. Apr.18, 2005). Accordingly, this element is in equipoise.

    d.  *Convenience of the Witnesses*

The party seeking transfer bears the burden of specifying the key witnesses to be called and summarizing their expected testimony. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167-68 (N.D. Ill. 1995). Moreover, when considering the convenience of witnesses, the court must evaluate the nature and relevance of the expected testimony instead of merely comparing the length of each party's witness list. *Id.* at 1168. The convenience of the witnesses "is often viewed as the most important factor in the transfer analysis." *Preussag Int'l Steel Corp. v. Ideal Steel & Builder's Supplies, Inc.*, No. 03 C 6643, 2004 WL 783102, at *5 (N.D. Ill. Jan.20, 2004)

The defendants are located in Florida and assert that they will call a significant number of witnesses who live in Florida in order to demonstrate that no infringement occurred. According to their proposed witness list, *see* Dkt. #27-3, the defendants list 14 witnesses they intend to call who reside in Florida. Two of these, Philip Shasteen and Lisa Shasteen, who are prior minority owners of Chapin, appear to be offering duplicative testimony regarding corporate history. Thus, only one of them would likely need to testify. Keith Henthorne and Timothy Carda have been dismissed as defendants. While the plaintiff contends that their testimony would be duplicative, given their prior status as defendants, it is not unreasonable to assume that each would be called to testify, and certainly Keith Henthorne appears to be a likely witness as he signed the confidentiality agreement that is the subject of the breach of contract count.

Most of the remaining defendants' party witnesses in Florida appear to be testifying regarding the development of the software at issue. While there is potentially some overlap in the testimony, given that the development of the software at issue is the critical issue in the case, it is probable that the defendants will be calling numerous different witnesses to testify on this

topic.  As for Don Steigman, who is the chief executive officer of Auditz, a defendant in the case, and another, David Finkel, who is the chairman of Auditz, the substance of their testimony is not provided and the court assumes that it would be overlapping such that each would not have to testify.

The defendants name six non-party witnesses (or classes of witnesses).  Two of them, Charles Van Der Veer and representatives of Tribridge, are located in Tampa and would testify to the development of the software at issue.  James Dudley is the president of JDA and lives in Illinois.  The other three witnesses (or class of witnesses) are located in neither Florida or Illinois.  Bon Secours Health Systems, Inc. representatives, who are located in Richmond, Virginia, and John McCann, who is also located in Richmond, Virginia, would testify to BSHS' relationship with the defendants.  Jason Maronge lives in Friendswood, Texas, and would testify regarding the software at issue.  James Dudley is in the subpoena power of this court.  However, Charles Van Der Veer, representatives of Tribridge, representatives of BSHS, John McCann and Jason Maronge are not.  Assuming these non-party witnesses were to appear voluntarily, each of the five would be required to travel whether it be to Illinois or Florida.

Accordingly, as to the defendants' witness list, while a number of their employees who live in Florida would be testifying on a topic relevant to this litigation (*i.e.*, software development, the confidentiality agreement and the business of the corporate defendants), the majority of the non-party witnesses live neither in Florida or Illinois and thus would be required to travel regardless.  While one non-party witness, Charles Van Der Veer, is within the subpoena power of the Middle District of Florida court, the rest are not within the subpoena power of either court.

The plaintiffs state they will call Mark McVeety, the chief strategic officer of Auditz, who lives in Illinois.  While they state that Mr. McVeety was highly involved with Emdeon, Inc.'s acquisition of Chapin while he was at B.C. Ziegler, the plaintiff fails to specify nor can the court ascertain how this testimony is relevant to the issues in this case.  The plaintiff also states that it intends to call "other employees and agents of Ziegler, as well as employees and agents of Emdeon, responsible for the due diligence Emdeon performed prior to its acquisition of Chapin."  Plaintiff's Opposition to Defendants' Motion to Change Venue, Dkt. #28, at 10-11.  Again, the plaintiff fails to articulate the relevance of this testimony or the reason that more than one person would need to testify regarding due diligence

The plaintiff states that it also will call multiple representatives of BSHS, who are presumably located in Richmond, Virginia, including John McMahon (whom the court believes to be the same person listed as John McCann on the defendants' witness list).  As noted above, these individuals would be out of the subpoena power of the district courts in both Illinois as well as Florida and would be required to travel wherever the trial is held.

Finally, the plaintiff indicates that it will call representatives of Intersoft Solutions "to testify to the proprietary software JDA developed specifically for Defendants."  Again, the plaintiff does not specify the relevance of such testimony to the case at hand or why "multiple

Page 12

representatives" would be required to testify. Moreover, the plaintiff fails to indicate where Intersoft Solutions witnesses are located, and only states that it "believes" that representatives of Intersoft are outside the subpoena power of both the Northern District of Illinois court and the Middle District of Florida court.

Ultimately, the plaintiff fails to identify any Illinois witness whose testimony is relevant to this case (though the court assumes the plaintiff would call James Dudley, its president, even though he was not identified by the plaintiff). As to the non-party witnesses, the only ones identified by the plaintiff are located in Richmond, Virginia, and would be required to travel regardless of where the trial is conducted. In addition, as already noted, these witnesses are not within the subpoena power of either court.

Thus, we have several non-party witness located in neither Illinois nor Florida and not subject to the subpoena power of either court. One non-party witness, Charles Van Der Veer, resides in Tampa and thus, not only would it be more convenient for him if the case were in Florida but he is also within the subpoena power of the court in the Middle District of Florida. Accordingly, consideration of the non-party witnesses leans slightly in favor of the Florida court. In addition, given the number of the defendants' witnesses who are located in Florida and the relevance of their testimony to the issues in the case, this factor, one of the more important ones, militates slightly in favor of transfer.

4. Interests of Justice Factors

When evaluating the interests of justice, the court considers: (1) each forum's familiarity with the applicable law; (2) each forum's relationship with the cause of action and respective desirability of resolving controversies in each locale; and (3) "the speed at which the case will proceed to trial." *Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.* 626 F.3d 973, 978 (7th Cir. 2010). "The interests of justice pertain to the efficient administration of the federal court system and may be determinative in a case, warranting transfer even where the convenience of the parties and witnesses dictates an opposite result." *CMG Worldwide, Inc. v. Bradford Licensing Assocs.*, No. 1:05-cv-0423-DFH-TAB, 2006 WL 3248423, at *5 (S.D.Ind. Mar.23, 2006) (citing Coffey, 796 F.2d at 220-21). *See also Mitchell v. First N. Credit Union*, No. 07 C 1891, 2007 WL 2948374, at *4 (N.D.Ill. Oct.4, 2007) (noting that the interests of justice may decide the outcome of a motion for transfer, "even though the court would otherwise find the [selected] forum inconvenient for the parties and witnesses").

a. *Forums' familiarity with the law*

The parties agree that the court's familiarity with the law does not favor either district. Accordingly, the court determines this to be a neutral factor.

b. *Forums' relationship with the cause of action*

The plaintiff is located in Illinois, which has an interest in "'adjudicating injuries to the

intellectual property rights of businesses that operate in this state.'" *Q Sales & Leasing, LLC v. Quilt Protection, Inc.*, 01 C 1993, 2002 WL 1732418, at *4 (N.D. Ill. July 26, 2002) (citation omitted). Accordingly, this factor weighs in favor of the case remaining in Illinois.

      c.  *Speed at which the case will proceed to trial*

According to the Judicial Caseload Profile, the median time for the twelve-month period ending September 30, 2010, from filing to disposition in civil actions is 6.2 months while the median in the Middle District of Florida is 7.4 months–as the defendants note, a negligible difference. However, as to the same period, the median time from filing to trial in the Northern District of Illinois is 28.2 months while the median time in the Middle District of Florida is 19.2 months. This difference is notable and slightly favors the Middle District of Florida.

      d.  *Other considerations*

As recently noted by the Seventh Circuit, "[t]he statutory language [of § 1404] guides the court's evaluation of the particular circumstances of each case and is broad enough to allow the court to take into account all factors relevant to convenience and/or the interests of justice." *Research Automation*, 626 F.3d at 978. In addition to the factors just discussed, the court notes that the defendants in this case, along with several other interested parties, have recently filed suit in Florida alleging claims related to the facts and claims alleged in this case. Specifically, in *Chapin Revenue Cycle Management, LLC et al v. JDA eHealth Systems, Inc. et al.*, No. 8:11-CV-858-T-33AEP, which is pending in the District Court in the Middle District of Florida, Chapin alleges that JDA and Dudley, president of JDA, tortiously interfered with an advantageous business relationship. According to Chapin and the other plaintiffs, JDA and Dudley accused Chapin, Auditz, Henthorne and Carda of copying JDA's software and sent a letter to a key client of Chapin and JDA, and prospective client of Auditz, stating that Chapin had copied JDA's software. Chapin alleges that the client then ceased doing new business with Chapin and abandoned its plans to expand its relationship with Chapin and Auditz, which caused Chapin damages.

"It is axiomatic, of course, that related suits should be concentrated in the same forum." *Avante Intern. Technology, Inc. v. Hart Intercivic, Inc.*, Nos. 08-636-GPM, 07-169-GPM, 2009 WL 2448519, at * (S.D. Ill. July 22, 2009) (*citing Van Dusen v. Barrack*, 376 U.S. 612, 644, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (transfer to the district where a related suit is pending is generally "accompanied by the full benefits of consolidation and uniformity of result")); *Coffey*, 796 F.2d at 221 (noting that "related litigation should be transferred to a forum where consolidation is feasible."). The lawsuits in Florida and Illinois, while not mirror images of each other, are clearly related and judicial efficiency and cost-savings to the parties could be achieved by consolidating them fully or at least for purposes of discovery. The court acknowledges that the plaintiff filed its case here first. However, the Seventh Circuit has recently noted that in the motion to transfer context, no preference for the first-filed case exists in this circuit. *Research Automation*, 626 F.3d at 982 ("[w]here a case is filed first should weigh no more heavily in the district court's analysis than the plaintiff's choice of forum in a section 1404(a) calculation. We

apply the same standard to a section 1404(a) motion regardless of whether there is a second-filed case."). Because the court has already considered the plaintiff's choice of forum above, it need not consider the filing order again.

Finally, the court notes that it has concluded that the plaintiff lacks personal jurisdiction over Carda and Henthorne. These defendants concede, however, that personal jurisdiction exists over them in Florida. Thus, a transfer to Florida will be advantageous to the plaintiff to the extent that it will allow Carda and Henthorne to be named as defendants in the case.

5. Summary

The court acknowledges that Illinois has an interest in resolving injuries to the intellectual property rights of its residents and that the plaintiff filed its case here first. However, based on the lack of any other factors favoring Illinois over Florida, the number and relevance of the defendants' witnesses based in Florida, the fact that most of the non-party witnesses will have to travel regardless of where the trial is held and are not within the subpoena power of either court, that one non-party witness is located in the Middle District of Florida, and the efficiencies that would result from having related cases pending in the same jurisdiction, the court, in its discretion, grants the defendants' motion to transfer the case to the United States District Court for the Middle District of Florida.

**Conclusion**

The motion to dismiss for lack of personal jurisdiction and for failure to state a claim [20-1] is granted in part and denied in part. The motion to dismiss for lack of personal jurisdiction is granted as to Timothy Carda and Keith Henthorne but denied as to Chapin. The motion to transfer [25-1] is granted and the case is hereby transferred to the United States District Court for the Middle District of Florida. Given the transfer, the court does not consider the motion to dismiss for failure to state a claim.

**ENTERED**:

**June** 23, 2011

_____
**Blanche M. Manning**
**United States District Court**

apply the same standard to a section 1404(a) motion regardless of whether there is a second-filed case."). Because the court has already considered the plaintiff's choice of forum above, it need not consider the filing order again.

Finally, the court notes that it has concluded that the plaintiff lacks personal jurisdiction over Carda and Henthorne. These defendants concede, however, that personal jurisdiction exists over them in Florida. Thus, a transfer to Florida will be advantageous to the plaintiff to the extent that it will allow Carda and Henthorne to be named as defendants in the case.

5. Summary

The court acknowledges that Illinois has an interest in resolving injuries to the intellectual property rights of its residents and that the plaintiff filed its case here first. However, based on the lack of any other factors favoring Illinois over Florida, the number and relevance of the defendants' witnesses based in Florida, the fact that most of the non-party witnesses will have to travel regardless of where the trial is held and are not within the subpoena power of either court, that one non-party witness is located in the Middle District of Florida, and the efficiencies that would result from having related cases pending in the same jurisdiction, the court, in its discretion, grants the defendants' motion to transfer the case to the United States District Court for the Middle District of Florida.

**Conclusion**

The motion to dismiss for lack of personal jurisdiction and for failure to state a claim [20-1] is granted in part and denied in part. The motion to dismiss for lack of personal jurisdiction is granted as to Timothy Carda and Keith Henthorne but denied as to Chapin. The motion to transfer [25-1] is granted and the case is hereby transferred to the United States District Court for the Middle District of Florida. Given the transfer, the court does not consider the motion to dismiss for failure to state a claim.

**ENTERED**:

**June** 23, 2011

_____
**Blanche M. Manning**
**United States District Court**